1 | Angela C Agrusa (Bar No. CA-131337)
angela.Agrusa@us.dlapiper.com
2 | David B. Farkas (Bar No. CA-257137)
david.Farkas@us.dlapiper.com
3 | **DLA PIPER LLP (US)**
2000 Avenue of the Stars
4 | Suite 400 North Tower
Los Angeles, California 90067-4704
5 | Tel:   310.595.3000
Fax:   310.595.3300
6 |
7 | Attorneys for Defendant
LEAD INTELLIGENCE, INC. d/b/a
8 | JORNAYA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HILL, individually and on behalf of all others similarly situated, , <br> Plaintiff, <br><br> v. <br><br> LEAD INTELLIGENCE, INC. d/b/a JORNAYA, , <br> Defendant. | CASE NO. 5:20-CV-01352-JWH-KK <br><br> [Assigned to Hon. John W. Holcomb] <br><br> **DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT** <br><br> Date:   November 6, 2020 <br> Time:   9:00 a.m. <br> Room:   2 <br><br> [*Request for Judicial Notice, Declaration of Larry Smith, and [Proposed] Order Filed Concurrently Herewith*] |

'

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ..................................................................................... 2

II.  FACTUAL BACKGROUND .................................................................. 6

   A.  Hill's Visit to the Website ........................................................... 6

   B.  Hill Filed Suit Against Quicken Under The TCPA. ............................... 9

   C.  Hill Purportedly "Discovers" Her Claim Against Jornaya And Files This Lawsuit. ................................................................... 10

   D.  How Jornaya's Technology Actually Works. ..................................... 10

III. ARGUMENT ......................................................................................... 14

   A.  Hill's Claims Are Time-Barred. ................................................... 14

   B.  Hill's Claim Under Section 632 Fails As A Matter of Law Because She Did Not Have a Reasonable Expectation of Privacy ....... 17

   C.  Hill Does Not State a Claim under Section 631. ................................ 18

      1.  Jornaya Accessed Information While It Was In Storage In Hill's Device. ................................................................. 19

      2.  Jornaya did not attempt to learn the "content or meaning" of Hill's communication. ................................................. 22

   D.  Hill's CIPA Claims Fail Because She Consented to the Alleged Activity .................................................................................. 23

IV.  CONCLUSION .................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 15

5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 15

6

7

*Bunnell v. Motion Picture Ass'n of Am.,*
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) .............................................. 20

8

*Campbell v. Facebook Inc.,*
  77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................. 18

9

10

*Cline v. Reetz-Laiolo,*
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) .................................. 3, 4, 18, 19

11

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.,*
  920 F.2d 457 (7th Cir. 1990) .............................................................. 17

12

13

*Faulkner v. ADT Sec. Servs., Inc.,*
  706 F.3d 1017 (9th Cir. 2013) ............................................................ 15

14

*Flanagan v. Flanagan,*
  27 Cal. 4th 766 (Cal. 2002) ................................................................ 18

15

16

*Fox v. Ethicon Endo-Surgery, Inc.,*
  35 Cal. 4th 797 (2005) .................................................................. 15, 16

17

*Garcia v. Enter. Holdings, Inc.,*
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........................................... 22, 23

18

19

*Hill v. Quicken Loans, Inc.,*
  Case No. 5: 19-cv-00163-FMO-SP (C.D. Cal.) .......................... 4, 7, 8, 15, 16, 17

20

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
  988 F. Supp. 2d 434 (D. Del. 2013), aff'd in part, vacated in part,
  remanded, 806 F.3d 125 (3d Cir. 2015) .............................................. 21

21

22

*In re Google Inc.,*
  No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26,
  2013) ................................................................................................... 18

23

24

*In re Nickelodeon Consumer Privacy Litig.,*
  No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ......... 21

25

*In re Vizio, Inc., Consumer Privacy Litig.,*
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................... 19, 20

26

27

28

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014)................................................................22

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .........................................................................20

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002).............................................................................19

*Maghen v. Quicken Loans Inc.*,
   94 F. Supp. 3d 1141 (C.D. Cal. 2015), aff'd in part, dismissed in
   part, 680 F. App'x 554 (9th Cir. 2017) ...........................................................22

*Montalti v. Catanzariti*,
   191 Cal. App. 3d 96 (1987) ...............................................................................15

*NYC Topanga, LLC v. Bank of Am.*,
   2015 WL 4075844 (C.D. Cal. July 2, 2015) .......................................................17

*People v. Nakai*,
   183 Cal.App.4th 499 (2010) ..............................................................................18

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .............................................18, 19

*Rustico v. Intuitive Surgical, Inc.*,
   424 F. Supp. 3d 720 (N.D. Cal. 2019)..................................................................3

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .............................................................................15

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) .......................................................................4, 19

*United States v. Barrington*,
   648 F.3d 1178 (11th Cir. 2011) .........................................................................20

*United States v. Ropp*,
   347 F.Supp.2d 831 (C.D. Cal. 2004) ..................................................................20

**STATUTES**

Cal. Pen. Code § 631 .......................................................................2, 4, 19, 20, 21

Cal. Pen. Code § 632 ...............................................................3, 17, 18, 19, 21, 22

**OTHER AUTHORITIES**

https://www.ca9.uscourts.gov/ ............................................................................12

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE THAT** on November 6, 2020 at 9:00 a.m., or as

3  soon thereafter as this matter may be heard in Courtroom 1 of the United States

4  District Court for the Central District of California, before the Honorable John W.

5  Holcomb, located at 3470 Twelfth Street Riverside, California 92501-3801,

6  Defendant Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") will and hereby does

7  move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order

8  dismissing the Complaint and claims therein of Plaintiff Amanda Hill ("Plaintiff" or

9  "Hill") with prejudice, for failure to state a claim upon which relief may be granted.

10   This Motion is based on the facts that (1) Hill's claims are time-barred; (2)

11  Hill fails to state a claim for violation of California Penal Code section 632, because

12  there is no reasonable expectation of privacy in internet communications; (3) Hill

13  fails to state a claim for relief under California Penal Code section 631, because

14  Jornaya did not intercept any communication while "in transit," as required by the

15  statute for liability; and Jornaya did not intercept the "content or meaning" of any

16  communication as required by the statute; and (4) Hill also fails to state a claim

17  under either section because she consented to any alleged activity.

18   This Motion is made following the conference of counsel pursuant to L.R. 7-3

19  which took place on September 28, 2020.

20   The Motion is based on this Notice of Motion and Motion, the accompanying

21  Memorandum of Points and Authorities in support thereof, the accompanying

22  Request for Judicial Notice, the pleadings on file with the Court, and such

23  arguments and authorities as may be presented at or before the hearing.

24   Dated:    October 5, 2020    By: /s Angela C. Agrusa

25                                    Angela C Agrusa
                                      David B. Farkas

26

27

28

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE
COMPLAINT

I. **INTRODUCTION**

Jornaya provides a service that allows website owners to secure evidence of prior express consent made by consumers who, through online submissions, request to receive telephone calls and text messages. That evidence can be used when the consumer later files a lawsuit asserting a claim for violation of the Telephone Consumer Protection Act ("TCPA") and alleges that the requested calls or text messages were unwanted. Plaintiff Amanda Hill is one such consumer. She and her counsel have filed a separate, nationwide TCPA class action against Quicken Loans, LLC in this Court. *See Hill v. Quicken Loans*, 5:19-cv-00162-FMO-SP ("Quicken Case"). Faced with Jornaya's evidence of her consent to the challenged calls and text messages in the Quicken case, Plaintiff and her counsel (who have brought numerous TCPA class actions over many years against a variety of defendants and so undeniably are well-familiar with Jornaya and its service) now bring this action in a transparent attempt to avoid that evidence on the theory that it was obtained in violation the California Invasion of Privacy Act ("CIPA). But this attempt fails at its inception because Hill has failed to state a cognizable claim for violation of the statute.

Both this lawsuit and the Quicken Case arise from Plaintiff's October 2018, visit to online comparison shopping website (lmb.YourVASurvey.info or the "Website") from her mobile phone for the purpose of obtaining an estimate on a home mortgage loan. During her visit, she provided certain information related to her request in response to a series of "webform" questions, and expressly consented to the collection and use of that information to contact her. After being contacted by a prospective lender in response to her visit to the website, Hill filed her TCPA lawsuit against that lender—Quicken.[1]

---

[1] Quicken obtained Hill's information from LMB Mortgage Services, Inc., d/b/a LowerMyBills.com ("LMB"). LMB is a "lead generator," a company that finds

Jornaya's patented product provides its clients with a solution that is both pro-business and pro-consumer. That product allows clients to protect against TCPA lawsuits like the one Hill brought against Quicken, and allows clients to protect consumers against misuse of their personal data by third-parties whom may falsely enter the information at a website. The product allows website owners—including the owner of the website at issue—to insert Jornaya's JavaScript code at various points on its website, and Jornaya's technology captures what was presented to a visitor during his or her visit to the website—e.g., the color, font, style, and content of the webpage. The JavaScript further directly captures form entries inputted by the visitor to the website from the user's own device, and then immediately applies a cryptographic "one-way hash function," rendering the information unintelligible to Jornaya or to anyone else. Through this service, a website owner can verify the events, and the authenticity of those events, that took place during a user's visit to the website, including the manifestation of consent to be contacted for purposes of the TCPA and other consumer protection laws. Critically, for purposes of this case, Jornaya does not obtain the visitor's identity, nor any intelligible information about the user. Jornaya also does not sell the data or market to the visitor. Rather, Jornaya's data permits the website owner to verify its own data against Jornaya's data to obtain verification of a visitor's interactions with a website, including a consumer's provision of TCPA consent to receive calls and text messages.

Apparently frustrated with Jornaya's product, which poses a substantial obstacle to TCPA class actions like Hill's case against Quicken and which verifies consent (and prevents manufactured TCPA claims), Hill and her counsel (experienced, repeat TCPA lawyers undoubtedly well-familiar with Jornaya's services from numerous past TCPA cases) now bring this lawsuit against Jornaya,

---

customers interested in a certain product. As discussed herein, LMB did not operate the Website. Instead, the Website owner and operator was Suited Connector LLC ("Suited Connector") (*See* Declaration of Larry Smith ("Smith Decl.").).

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT

1    alleging that the product somehow violated the California Invasion of Privacy Act,

2    Cal. Penal Code §§ 631 and 632 ("CIPA").[2] But as demonstrated below, the

3    Complaint is untimely and is defective in numerous respects and should therefore be

4    dismissed.

5    **First**, Hill's claims are time-barred. Although she alleges that she only

6    discovered her claim against Jornaya in December 2019, her counsel has been

7    intimately involved in and has represented Hill in her putative class action lawsuit

8    against Quicken, which was filed on January 28, 2019. As this Court may confirm

9    from a review of judicially-noticeable and publicly-available court records, a central

10   issue in that case has been the arbitration clause in LMB's Terms of Use. As part of

11   that case, Hill and her counsel had access to and undoubtedly reviewed (or should

12   have reviewed) both Suited Connector's Privacy Policy and LMB's Privacy Policy,

13   both of which were prominently displayed to Hill during her visit to the Website.

14   Both Policies (which this Court may consider in ruling on this Motion because

15   Hill's allegations put the content of the subject website at issue) explicitly notified

16   Hill (and her counsel) that the Website employed Jornaya's technology to be able to

17   recreate Hill's interaction with the Website. Thus, for at least six months or more

18   from the time Hill filed her complaint against Quicken, Hill and her counsel were

19   aware that the Website employed Jornaya's technology. As such, Hill was on

20   inquiry notice of her claims and cannot meet her burden to toll the applicable one-

21   year statute of limitations via the discovery rule. *Rustico v. Intuitive Surgical, Inc.*,

22

23   [2] Hill's counsel has publicly advocated to the Federal Communications Commission
24   in TCPA rulemaking for website owners to "monitor and oversee" third-party
     websites, including by reviewing "web traffic reports, and conduct any other level of
25   appropriate oversight to ensure that the leads are legitimate and not being
     manufactured." Comment of Law Offices of Todd M. Friedman, P.C., and
26   Kazerouni Law Group, APC to Rulemaking Proceeding No. 02-278, at 11, *available*
     at https://ecfsapi.fcc.gov/file/10623866827457/FCC%20Comment%20-
27   %20unfiled.pdf (last accessed: October 5, 2020). It is thus ironic that Hill's counsel
     now challenges in this lawsuit those very measures that it advocated for after they
28   were used as evidence against their client, Hill, to prove her lead was "legitimate
     and not being manufactured."

424 F. Supp. 3d 720, 737 (N.D. Cal. 2019) quoting *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111 (1988) (en banc) ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." Instead, "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.") Plaintiff's inexcusable delay in filing this suit renders it subject to dismissal.

**Second**, Hill's claim under Penal Code section 632 fails as a matter of law because that statute required that Hill have a "reasonable expectation of privacy" in her communication, or in other words, that the communication was "confidential." Courts in the Ninth Circuit have uniformly concluded, however, that internet-based communications are not confidential. *See., e.g., Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("Internet-based communications are not 'confidential' within the meaning of section 632").

**Third**, Hill's claim under Penal Code section 631 fails as a matter of law because Jornaya's JavaScript does not (and cannot) intercept any communication. Rather, publicly available patent records confirm that it (as most any website does) obtains information directly from a user's device in storage, while the information is stored in Random Access Memory ("RAM"). It is black-letter law that section 631 does not prohibit accessing information while it is in storage, even if it is subsequently sent via an electronic communication to another recipient. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (holding that defendant did not "intercept" plaintiff's emails when defendant gained unauthorized access to plaintiff's emails which were already delivered and held in electronic storage by plaintiff's service provider's server); *Cline*, 329 F. Supp. 3d at 1051 ("Like its federal counterpart, [this] section of [CIPA] require[s] the interception of an electronic communication."). Because Jornaya's JavaScript did not and could not intercept Hill's communications, but rather obtained the data directly from Hill's mobile device's storage, her claim under section 631 fails as a matter of law. Indeed,

if that were not the case, nearly every internet website (including the Ninth Circuit's) would be in violation of section 631. Additionally, Hill's section 631 claim fails because Jornaya does not obtain the "content or meaning" of any communication, because it only stores "hashed" or unintelligible data that is not associated with any particular individual.

**Fourth**, Hill's claim fails under both sections of CIPA because she was notified by the website owner and provided consent to the use of third-party JavaScript to function in precisely the way Jornaya's script did during her interaction with the website. As such, her entire complaint should be dismissed.

## II.   FACTUAL BACKGROUND

### A.   Hill's Visit to the Website.

Hill alleges that on October 10, 2018, while in California, she used her mobile device to visit an online comparison shopping website, YourVASurvey.com, which she contends is owned by LMB, for the purpose of obtaining an estimate on a home loan. (Compl. ¶ 15.) In fact, as Hill knows from her status as lead plaintiff in the Quicken Case, she actually visited lmb.YourVASurvey.info (the "Website") and that site is owned by third-party Suited Connector LLC. (Smith Decl., ¶ 2.)[3] During her visit, she navigated through several pages and completed webforms prompting her for some general information regarding her request for mortgage information. (Compl., ¶¶ 16-19.) On each and every page, Suited Connector's Terms of Use and

---

[3] "[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Here, Hill makes allegations regarding the disclosures that were present on the Website during her visit. (Compl. ¶¶ 40, 43, 45.) As such, the documents submitted via the Smith Declaration and Request for Judicial Notice should be considered by the Court. The publicly available documents filed in the Quicken Case are likewise subject to judicial notice.

Privacy Policy were visible and hyperlinked. (Smith Decl., ¶¶ 3-5, Exh. A.) The Privacy Policy stated—in a section entitled "**How We Use and Share Information**," (bold in original)—that "The information collected is used to provide you with additional information regarding the services and/or products you have expressed interest in. This may include sharing your PII on to a third party who provides such services or products. . . 1. We share your PII and Non-PII information with third parties who will provide you with their opportunities, products or services. This includes your interests and preferences, so they may determine whether you might be interested in their products or services. 2. **We also share your PII and Non-PII information with companies and individuals we employ to perform technical or mechanical functions on our behal**f, **such as third parties who host our website, analyze our data**, provide marketing assistance, process credit card payments, and provide customer service." (*Id*., emphasis added.) In other words, Suited Connector explicitly disclosed to Hill that by using the website and submitting information in the form fields, she authorized that her information would be shared with third-parties.

Despite these disclosures, and despite the fact that the Website owner and operator was actually Suited Connector, Hill claims that she "believed at all times during her visit to the [Website] that the confidential information she was inputting into the page would only be communicated to the site's owner and operator, LMB." (Compl. ¶ 22.)

Hill then navigated to the final page on the Website that included a button entitled "See my results!," below which was language indicating that by clicking the button, Hill would agree to share her information with lending partners and for those lending partners to contact her via by telephone. (Compl., ¶ 20.) The disclosures appeared as follows:

1

2

By clicking the button above, you express your understanding and consent, electronically via E-sign, to the following:

1. To be matched with, and contacted by, up to 5 participants in the LMB Provider Network about mortgage and financial services products, and consent (not required as a condition to purchase a good/service) for us and them to contact you (including through automated or prerecorded means) via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call Registry. As an alternative, you may contact us by email at customercare@coredigital.com

2. To the LMB Lending Terms of Use, Privacy Policy, and Consent to Doing Business Electronically.

3. And that as a condition of such consent, you are providing express Written Instructions (as defined under applicable law(s)) to LMB to utilize your information in order to reference your consumer credit report for the purpose of validating your self-reported information. Matched Providers will contact you directly to discuss their financial services and products, and to gather additional information, in order to best service your request for information and products.

4. Additionally, if selected above, you consent to be matched to up to an additional 3 providers about solar services, home improvement services, and home insurance services, and consent (not required as a condition to purchase a good/service) for us and them to contact you (including through automated or prerecorded means) via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call Registry. As an alternative, you may contact us by email at customercare@coredigital.com.

(Smith Decl., ¶ 6.)

Hill alleges that she did not press the button, and that even if she did, she had no reason to believe that any of her personal information would be intercepted, monitored, or recorded by [Jornaya] or any other third-parties undisclosed to her by LMB." (*Id*. ¶ 24.) In fact, not only did the list of lending partners that was disclosed to Hill number in the hundreds, the language just below the "See my results!" button contained a link to LMB's Privacy Policy, which stated:

**Tracking Technologies**

Technologies such as cookies or similar technologies are used by LowerMyBills.com and our marketing providers, display advertising network providers, affiliates, and other campaign performance tracking and analytics service providers, such as **Lead Intelligence, Inc. (d/b/a Jornaya)**, whose privacy policy can be viewed here:

8
DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT

https://www.jornaya.com/consumer-privacy -policy. **These technologies are used in analyzing trends, administering the site, tracking users' movements around the site (including capture of visual snapshots of your activity on our site)** and to gather demographic information about our user base as a whole. We may receive reports based on the use of these technologies by these companies on an individual as well as aggregated basis.

(*Id.*, Exh. B.)

In other words, Hill was explicitly informed that the Website employed Jornaya's (and other third-party services) in order to verify Hill's interaction with the site and to confirm any consent she provided to be contacted by lenders in response to her request for mortgage information.

### B.    Hill Filed Suit Against Quicken Under The TCPA.

On January 28, 2019, Hill filed suit against Quicken for alleged violation of the TCPA. A central issue in the Quicken Case is whether Hill clicked the "See my results!" button, thereby providing affirmative express consent under the TCPA to be contacted. A secondary question in that case is whether Hill consented to an arbitration clause contained in LMB's Terms of Use. Despite her allegations to the contrary in her Complaint in this action (*see, e.g.*, ¶ 18, alleging that she submitted her telephone number, home address, and telephone number), Hill submitted a sworn declaration in the Quicken Case stating that: "Although I may have partially filled in some of the **non-personal intake information** on the webpage, **I did not complete all of the intake fields, and in particular, I did not input any of my personal contact information**, did not click any "See my results" or "Click to See Your Free Results" buttons or other buttons on any such website, and did not ever receive notice of or agree to any purported terms of service available related to any such website." (RJN, Exh. A, emphasis added.) She confirmed: "Again, at no point have I ever inputted my telephone number or any of my personal contact information into the YourVASurvey or LowerMyBills.com website or any other website associated with Quicken, LMB, or any related companies. And I never

pressed any button to submit the information that I did input into any form on any Quicken, LMB, or related webpage." (*Id.*)

## C. Hill Purportedly "Discovers" Her Claim Against Jornaya And Files This Lawsuit.

Hill alleges that Jornaya used a "Spyware Apparatus" to secretly intercept, monitor, and record, in real time, her keystrokes, mouse clicks, and other confidential communications with the website. (Compl. ¶¶ 33, 34.) In fact, as discussed in Section II.C. below, Jornaya's patented technology did nothing of the sort. Critically, for purposes of the relevant one-year statute of limitations, Hill alleges that she "first learned of [Jornaya's] use of its Spyware Apparatus to intercept and record her confidential communications on the YourVASurvey.info website (as alleged above) on December 9, 2019, during the discovery process in [the Quicken Case.]" (*Id.* ¶ 50.) Hill does not (and cannot) explain why she could not have "discovered" her claims during the six month period after she filed her suit against Quicken and July 3, 2019 (one year prior to her filing this lawsuit), during which time she and her attorneys undoubtedly reviewed (or at least should have reviewed) LMB's Privacy Policy that directly notified her that the Website used Jornaya's technology as discussed above.

## D. How Jornaya's Technology Actually Works.

Jornaya's TCPA Guardian Service is a patented product that website owners, lead generators, mortgage lenders, insurance carriers, schools and others may license and choose to enable by inserting Jornaya's proprietary and patented JavaScript into the websites they operate and control. (RJN, Exh. B.) A website owner may choose to insert the JavaScript at any or all points in their website flows, in order to assist the website owner and their business partners to ensure TCPA Compliance and to provide proof of such compliance should they require it.[4] (*Id.*) It

---

[4] In addition to proving compliance with any other consumer protection laws or otherwise verifying interactions with the website.

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT

1    benefits consumers, website owners, and marketers, in that it provides verification

2    and documentation of consent, which ensures that only those consumers who have

3    given their affirmative consent are contacted, and it safeguards against false post-

4    hoc claims that a user did not consent to be called or misuse of consumer data by

5    third-parties.

6        The TCPA Guardian Service does not, however, record or intercept any

7    communications between a website owner and a visitor. Rather, the tool enables a

8    website owner to *recreate* a visitor's interactions with a website. (*Id*. at Abstract:

9    "An improved process for recreating a webpage as presented to the visitor is

10   provided.") It does that by using technology that is common across the internet—

11   JavaScript. The JavaScript is code that is offered to a website owner to place at any

12   point in their website flows. In summary, the technology works as follows: (1) when

13   (and *only* when) a website owner places the JavaScript on their website, the first

14   thing that occurs when a visitor loads the page is that a unique "LeadiD" is created.

15   The LeadiD is a random Universal Unique Identifier ("UUID") (e.g., 3a59a5e5-

16   65d6-4bb8-b199-bf16ad344b2a). It is not attributable to any individual, but rather to

17   the specific visit to the website (*Id*. at "Summary."); (2) the JavaScript then collects

18   information about the website (i.e., its content, color, design, elements, and

19   appearance) in order to be able to verify what the visitor saw during their visit; (3)

20   for any form fields where a visitor may input information, the JavaScript sends a

21   network request to obtain the <u>information directly from the visitor's device's</u>

22   <u>Random Access Memory "RAM"</u>; and (4) Jornaya's servers automatically apply a

23   cryptographic one-way hash function that renders the form-field information

24   unintelligible both to Jornaya to anyone else. (*Id*.)[5]

25   _____

26   [5] A hash value is an alphanumeric sequence that is unique to a specific digital
     character or file. Any identical copy of the character or file will have exactly the
27   same hash value as the original, but any alteration of the character or file, including
     even a change of one or two characters of text, would result in a different hash
28   value.

Then, a website owner (or lender, insurance carrier, school, or lead generator) can check its own data against Jornaya's LeadiD and hashed values to confirm the accuracy of what occurred during a visit. If requested, Jornaya can use the website owner's information in conjunction with the information obtained by its JavaScript to create a "reenactment" or "re-rendering" of the visitor's interactions with the website. (*Id.*)

One of the patents describing Jornaya's TCPA Guardian Service verifies this process. Patent No. 1,0366,140 (the "'140 Patent") describes the fact that Jornaya's JavaScript sends a network request to obtain information about the website visitor's entries directly from the visitor's device. The patent further clearly explains that Jornaya's JavaScript does not record interactions with the website, but rather obtains information about the website's appearance and separately obtains the visitor's entries from the visitor's device in order to subsequently be able to create a visual re-rendering or reenactment of the visit. (*Id.*)

> Some embodiments of the present invention are directed to a system, apparatus, and process for capturing content when a visitor of a webpage accesses and/or **enters information into the webpage owned and/or operated by a lead generator from his or her device (e.g., the client device**). For example, in some embodiments, the content displayed on the webpage is scanned and transmitted to a server. The style, format, etc., of the webpage can also be scanned and transmitted to a server. **This allows the server to create a snapshot of the captured content, i.e., recreate the webpage as displayed to the visitor. This can be performed each time a script for capturing the content loads. In other embodiments, the capturing of the content can be performed each time the visitor performs an action, such as filling out information in a fillable form on the webpage, refreshing the webpage, or loading another webpage of the lead generator. Such actions may be referred as a lead event**.

(*Id.*, emphasis added.) In other words, each time an action is taken, for example, loading or refreshing the page or filling out a form field on a website is referred to as a "lead event." For each lead event, the JavaScript pulls data about the website's

appearance so that what the visitor saw can be recreated later. Further, when a visitor fills out a form field, the visitor's input is pulled directly from storage on the user's device:

> **The process begins at 505 with the server receiving captured (or scanned) information <u>from the client device</u>**, and saving the captured information in a local or remote database at 510. . . . At 515, the captured information (e.g., style elements and the structure of the webpage) is used to recreate the webpage. This recreation process allows a server to playback the actions performed by the visitor on the webpage. See, for example, item 1705 of FIG. 17.

(*Id.*) "Client device" in the patent "may include, but are not limited to, a laptop, a desktop, and a portable computing device, such as a mobile device." In other words, Jornaya's JavaScript obtains the information directly from storage in the visitor's device. As relevant to this case, when Ms. Hill visited the Website and entered in her zip code (as the Complaint concedes she did, although she inexplicably denied doing so in the Quicken Case), <u>that data was stored on her own device in RAM</u>. Once she clicked out of the form field containing her zip code, Jornaya's script sent the already stored information to Jornaya's servers, where it was stored in hashed format. The data was not intercepted while in transit to Suited Connector (or LMB or any other entity), because it was requested and obtained directly from Ms. Hill's device's RAM.

This functionality is commonplace across the internet. As just one example, the Ninth Circuit's website contains a search bar on its landing page that employs Google JavaScript to operate. When a visitor types a search into the form field, Google's JavaScript is triggered and the search is relayed to Google's servers.[6] Just the same way that Jornaya's JavaScript obtains content directly from a visitor's device's RAM during a visit to the Website, Google's JavaScript obtains the content

---

[6] See https://www.ca9.uscourts.gov/ (last accessed: Oct. 5, 2020.)

1   of a search on the Ninth Circuit's website directly from the visitor's device in

2   storage.[7] This same process occurs millions of times across the internet on a daily or

3   hourly basis.

4   **III.   ARGUMENT**

5       The Complaint must be dismissed if it does not "contain sufficient factual

6   matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

7   556 U.S. 662, 678 (2009) (quotation omitted). Plaintiff must do more than plead

8   "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

9   "formulaic recitation of the elements of a cause of action will not do." *Id*. Although

10  well-pleaded allegations of material fact are taken as true, *Faulkner v. ADT Sec.*

11  *Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013), the Court does not "accept as true

12  allegations that are merely conclusory, unwarranted deductions of fact, or

13  unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

14  (9th Cir. 2001).

15      **A.    Hill's Claims Are Time-Barred.**

16      CIPA has a one-year statute of limitations. *Montalti v. Catanzariti*, 191 Cal.

17  App. 3d 96, 98 & n.1(1987). All of Hill's claims arise from her interaction with the

18  Website in October 2018. (Compl. ¶ 15.). Because she did not file suit until 19

19  months later, in July 2020, Hill's CIPA claims are time-barred.

20      Hill alleges, in conclusory fashion, that the "delayed discovery" doctrine rule

21  saves her claims. (Compl. ¶¶ 50, 51.) It does not. To avail herself of this doctrine,

22  Hill must "specifically plead facts to show (1) the time and manner of discovery and

23  (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v.*

24  *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted). Hill

25  attempts to plead the first elements by alleging that she only discovered the basis for

26

27

28  [7] The initiation of these scripts can be viewed by using the "Developer's Tools" in web browsers like Chrome.

her claims in December 2019, through discovery in the Quicken Case. (Compl. ¶ 50.) But she fails to adequately plead the second requirement: that, despite diligent investigation of the circumstances of the injury, [s]he . . . could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal. 4th at 809. Hill pleads no factual allegations of any reasonable diligence by her—let alone any factual basis from which this Court could conclude that Hill could not have discovered her claims earlier despite the exercise of reasonable diligence. Nor could she because, under California law, plaintiffs "are charged with presumptive knowledge of an injury if they have 'information of circumstances to put them on inquiry,' or if they have 'the opportunity to obtain knowledge from sources open to their investigation." *Id*. at 807-08 (internal alterations omitted). "[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Id*. at 807. All of these circumstances are present here, because the information Hill claims was lacking was disclosed on the Website at the time of her October 2018 visit.

Thus, Hill's conclusory assertion that she "could not reasonably have discovered the facts giving rise to the claims alleged herein – i.e., Defendant's interception, monitoring, and recording of her confidential communications on the YourVASurvey.info website on October 10, 2018 – until she received documents and other materials that revealed such practices on December 9, 2019, in connection with the discovery process in the Hill v. Quicken Loans, Inc. litigation," does not withstand scrutiny. (Compl. ¶ 51.) LMB's Privacy Policy explicitly describes the fact that Jornaya's technology was implemented on the Website and that such technology was "used in analyzing trends, administering the site, tracking users' movements around the site (including capture of visual snapshots of your activity on our site)." (Smith Decl., ¶ 7, Exh. B.) That Privacy Policy was hyperlinked on the last page Hill saw as she navigated through the Website. (*Id*.) Additionally, the

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE
COMPLAINT

version of the Suited Connector Privacy Policy in place in January 2019 (when Hill filed the Quicken Case) and through today—which is conspicuously located on each page of the Website's flow—states:

**Technology We Utilize**

The use of technologies such as cookies, web beacons and java script may be implemented by us and third parties. These will be placed and used as tracking technologies by us, third parties and advertisers. These technologies and some that are similar collect web technology information about you such as: internet protocol (IP) addresses, browser type, internet service provider (ISP), referring/exit pages, operating system, date/time stamp, and/or mouse and clickstream data. We may receive reports based on these technologies on an individual or aggregated basis for analysis purposes.

\*       \*       \*

JavaScript. We may also use JavaScript. JavaScript is a computer language that enhances the functionality of web properties, particularly with respect to pictures. We or third parties also use it to track, record and analyze user interactions, provide proof of legal compliance, and improve our site's functions. You may deactivate JavaScript through your browser settings or activate it the same way.

(Smith Decl., ¶ 7, Exh. B; RJN, Exh. C.)

Both LMB's Privacy Policy and Suited Connector's Privacy Policy were available to Hill at the time she visited the Website and in January 2019, when she filed her lawsuit against Quicken about her interaction with the Website. Her counsel in this case—who also represent Hill in the Quicken Case—undoubtedly reviewed (or, at least, should have reviewed) these documents in conducting their reasonable investigation into Hill's claims and Quicken's defenses. This is particularly obvious in TCPA litigation, where a central question is whether the person called consented to any terms, and whether adequate disclosures were made regarding the use of autodialing technology. Further, another central question in the Quicken Case is whether Hill consented to an arbitration clause. It is simply not

**DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT**

reasonable to believe that Hill and her counsel did not review the relevant disclosures and agreements present on the Website during the six month period between January 28, 2019 (when Hill filed the Quicken Case) and July 3, 2019 (one year prior to her filing this lawsuit). In fact, Hill and her counsel were on "inquiry notice" of her claims well before December 2019 and well before July 2019, and thus her claims are time-barred.[8] *See NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) ("Plaintiff's failure to read the Agreement cannot support a claim for delayed discovery."); *DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.2d 457, 466 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice.").

## B. Hill's Claim Under Section 632 Fails As A Matter of Law Because She Did Not Have a Reasonable Expectation of Privacy.

Hill's claim against Jornaya under section 632 of CIPA fails as a matter of law because that section requires that the communication be confidential. A communication is confidential under section 632 if one of the parties "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (Cal. 2002). And as even a cursory analysis of California law reveals, courts have developed a presumption that internet communications do not reasonably give rise to that expectation.

California appellate courts have generally found that internet-based communications are not "confidential" within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the

---

[8] Plaintiff was on inquiry notice at least as of the filing of her complaint in the Quicken Case because she and her counsel had access to—and must have reviewed—both Suited Connector's and LMB's Privacy Policies, which both disclosed the existence of third-party technology embedded in the Website. LMB's Privacy Policy explicitly referred to Jornaya's technology. (Smith Decl., ¶ 7, Exh. B.) Additionally, in April 15, 2019, Quicken filed a declaration from the General Counsel of LMB that specifically referred to LMB's Privacy Policy. (RJN, Exh. C, Viner Decl. at ¶ 10-11.)

1    communications. *See, e.g., People v. Nakai*, 183 Cal.App.4th 499, 518 (2010);

2    *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (Facebook

3    users did not have a reasonable expectation of privacy in the messages they sent on

4    the platform since California appellate courts hold that Internet communications are

5    not confidential); *Cline* 329 F. Supp. 3d at 1051 ("Internet-based communications

6    are not 'confidential' within the meaning of section 632, because such

7    communications can easily be shared by, for instance, the recipient(s) of the

8    communications."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918,

9    at *23 (N.D. Cal. Sept. 26, 2013) (reviewing California Courts of Appeal decisions

10   suggesting "internet-based communication cannot be confidential" and concluding

11   that plaintiffs had "not plausibly alleged that they had an objectively reasonable

12   expectation that their email communications were 'confidential' under the terms of

13   section 632.").

14            In *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23,

15   2019), the court considered whether claims alleging that a defendant wiretapped the

16   plaintiff's communications and scanned his computer for files revealing his identity

17   during his visit to an internet clothing retail website. After reviewing and discussing

18   the uniform holdings that internet communications are not confidential, the court

19   held that "[n]othing about these particular internet communications—inquiring

20   about items of clothing on a retail website—warrants a deviation from this general

21   rule." *Id*. at *3. Likewise here, nothing about the particular internet communications

22   at issue in Hill's complaint—inquiring about a potential loan—warrants a deviation

23   from the general rule that internet communications are not confidential for purposes

24   of section 632. As such, Hill's claim under section 632 should be dismissed as a

25   matter of law.

26        **C.    Hill Does Not State a Claim under Section 631.**

27            Hill's claim under section 631 fares no better. It should be dismissed on two

28   independent grounds. <u>First</u>, as confirmed by court, patent, and other records of

which this Court may take judicial notice, Jornaya's JavaScript does not (and cannot) intercept communications while they are in transit. In fact, it does not intercept any communication at all. Instead, as described above, the JavaScript obtains information directly *from storage* on the user's device. <u>Second</u>, Jornaya did not obtain the "content or meaning" of a communication, as required under the statute.

> 1. <u>Jornaya Accessed Information While It Was In Storage In Hill's Device</u>.

"CIPA is violated when a person 'reads, or attempts to read, or to learn the **contents or meaning** of any message, report, or communication **while the same is in transit or passing over any wire, line, or cable**.' The analysis for a violation of CIPA is the same as that under the federal Wiretap Act [Electronic Communications Privacy Act or "ECPA"]. Like its federal counterpart, this section of CIPA requires the interception of an electronic communication." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050–51 (N.D. Cal. 2018) quoting Cal. Pen. Code § 631 (other citations omitted, emphasis added).

The Ninth Circuit has clarified that for a communication to be "intercepted" under the ECPA, it must be acquired during transmission, not while it is in electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (holding that defendant did not "intercept" plaintiff's emails when defendant gained unauthorized access to plaintiff's emails which were already delivered and held in electronic storage by plaintiff's service provider's server); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153-54 (C.D. Cal. 2007) (holding defendant did not "intercept" plaintiff's messages where he configured plaintiff's server so that plaintiff's messages were copied and forwarded from the server to defendant's email account). *See also United States v. Barrington*, 648 F.3d 1178, 1202 (11th Cir. 2011)("[U]se of a keylogger will not violate the Wiretap Act if the signal or

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT

information captured from the keystrokes is not at that time being transmitted beyond the computer on which the keylogger is installed (or being otherwise transmitted by a system that affects interstate commerce).”); *United States v. Ropp*, 347 F.Supp.2d 831, 832 (C.D. Cal. 2004) (dismissing wiretap claim because a keylogging software intercepted signals between keyboard and computer's processing unit, not electronic communications transmitted by a system that affects interstate commerce).

Here, Hill fails to plead any facts (beyond mere conclusions) regarding how Jornaya allegedly intercepted her communications, which is fatal to her claim. In *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1227-28 (C.D. Cal. 2017), the court granted a motion to dismiss where the plaintiffs made only conclusory allegations of the purported interception during transmission. In dismissing the plaintiffs' federal Wiretap and Section 631 claims, the Court held that:

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications. Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission" (Compl. ¶ 128.), Plaintiffs rely on a rather inscrutable graphic with no textual explanation (id. ¶ 52) and vague allegations about how Vizio's data collection occurs "in real time" (id. ¶¶ 39, 41–42, 49, 62). While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications. A written explanation of Plaintiffs' theory of interception is particularly important in this case because the graphic Plaintiffs include in their Complaint suggests that Vizio transmits their data to its Inscape platform significantly after the data arrive at their Smart TVs. (See id. ¶ 52.)

*Id.* Here, Hill does even less than the plaintiffs in *Vizio* with respect to her Section 631 claim. She does not allege when or how Jornaya intercepted her communications, nor does she include any graphic attempting to illustrate the purported interception of a communication during transmission. Instead, she offers the bald elements of the statute and nothing more. (Compl. ¶¶ 25, 27.) This is

insufficient, and perhaps unsurprising, given the publicly available documentation regarding how Jornaya's technology actually works.[9]

In fact, Hill has not and *cannot* plead facts regarding interception, because as detailed above, Jornaya's technology has no capacity to intercept or monitor any communications and does not and cannot monitor a website's visitor's interactions in real-time. It further lacks the capacity to track mouse movements or clicks or to record keyboard clicks as they are entered. Instead, the JavaScript does nothing until the website user leaves a particular form field. At that point, the JavaScript initiates a network request to obtain the content of the user's form field entry from the user's own device's RAM. The JavaScript does not "monitor" or "intercept" communications, because it obtains the information directly from the website visitor's computer storage. The JavaScript does not and cannot "intercept" any communication while in transit, because it communicates directly with the website visitor's device.[10] (RJN, Exh. B.)

Thus, because Jornaya's technology did not "intercept" a communication while "in transit," but instead accessed data directly from Hill's device while that data was *in storage*, Hill's section 631 claim fails as a matter of law.

---

[9] Hill's failure to adequately allege how Jornaya's technology works is troubling given that she and her counsel had ample opportunity to conduct a reasonable investigation into Jornaya's technology *prior* to filing the Complaint. *See Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2003 WL 21699799, at *7 (N.D. Cal. Mar. 21, 2003). Hill had access to publicly available documentation along with documents and information produced in the Quicken Case, and could have also conducted discovery regarding Jornaya's technology in that case. Having failed to conduct a reasonable investigation under Rule 11 of the Federal Rules of Civil Procedure, Hill must not reaffirm or renew her inaccurate allegations in subsequent "presentations" to the court. *See* Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 FRD 401, 586 (1993); *MHC Investment Co. v. Racom Corp.*, 323 F.3d 620, 627 (8th Cir. 2003).

[10] And again, Jornaya's JavaScript only operates at the website owner or operator's election, when the website owner or operator places the JavaScript on its website. It is not "Spyware," but rather a third-party product offered to website owners, lead generators, mortgage lenders, insurance carriers, schools and others in order to verify consumer consent. This benefits marketers and consumers alike, by helping ensure that companies contact only those consumers who affirmatively consent to be contacted.

2.       <u>Jornaya did not attempt to learn the "content or meaning" of Hill's communication</u>.

As discussed above and confirmed by the records and information this Court may consider in ruling on this Motion (RJN, Exh. B), Jornaya's server automatically applies a one-way hash function to render the contents of a user's entries in the form fields on the Website unintelligible to Jornaya (and anyone else). Additionally, Jornaya does not receive the identity of the visitor to the website. Instead, it generates a LeadiD that is associated with the particular website visit, but which has no visibility into the user's identity. Section 631 proscribes only attempting to learn the "contents or meaning" of a communication, which Jornaya does not do. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("we hold that under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 988 F. Supp. 2d 434, 445 (D. Del. 2013), aff'd in part, vacated in part, remanded, 806 F.3d 125 (3d Cir. 2015) (same as applied to ECPA and CIPA); *In re Nickelodeon Consumer Privacy Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *14 (D.N.J. July 2, 2014) ("The Wiretap Act claim must also fail because there are no allegations that Defendants intercepted 'contents' of communications, as required by the Act. In this regard, the Court agrees with the District of Delaware's cogent and persuasive Google Cookie decision, which holds that 'contents' as defined in the Act consist of "information the user intended to communicate, such as the spoken words of a telephone call.").

Here, Jornaya did not store the equivalent of the "spoken words of a telephone call." Instead, it receives the equivalent of static. It is true that the hashed values Jornaya receives can be used to verify the information that the website owner received, but that is all that can be done with it. Put simply, Jornaya has no way to

22

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT

take any of the information it received and to identify any website visitor, much less the contents of their webform submissions.

### D. Hill's CIPA Claims Fail Because She Consented to the Alleged Activity.

Hill's claims fail for the additional reason that she consented to the operation of Jornaya's script on the Website. Sections 631 and 632 of the Penal Code prohibit certain activities only where no consent has been given. For example, section 631 holds liable anyone "who willfully ***and without the consent of all parties to the communication***, ***or in any unauthorized manner***, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state . . ." Cal. Pen. Code § 631. Likewise, section 632 states attributes liability to "[e]very person who, intentionally and ***without the consent of all parties to a confidential communication***, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . ." Cal. Pen. Code § 632. "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint," and may be challenged on a motion to dismiss. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

And although "[Hill] denies having conferred [her] consent, the Court need not accept as true any allegations contradicted by 'matters properly subject to judicial notice or by exhibit' or 'that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* Here, Suited Connector's Privacy Policy was conspicuously hyperlinked at the bottom of each and every page of the Website visited by Hill. That Privacy Policy explicitly notified Hill that Suited Connector shares certain information with third-parties like Jornaya.

Ms. Hill was therefore on notice that her information could be shared with third-parties. *See, e.g., Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1145

(C.D. Cal. 2015), aff'd in part, dismissed in part, 680 F. App'x 554 (9th Cir. 2017); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (granting Yahoo's motion to dismiss claim under Wiretap Act because email users agreed to terms of use and privacy policy). Here, Hill consented to Jornaya's technology being embedded in the Website by virtue of the Privacy Policy located on each page of the Website, and she therefore has no claim under CIPA.

Hill will undoubtedly claim that although the Privacy Policy was conspicuously hyperlinked on each page of the Website, she did not affirmatively assent to those terms. In fact, she alleges falsely that "[t]he [Website] lacked any clear or conspicuous disclosure language or disclaimer statement to notify Plaintiff in advance of Defendant's interception, monitoring, or recording of her communications while interacting on the website." (Compl. ¶ 29.) She further alleges that she did not press the "See my Results!" button on the last page of the webflow, but that even if she had pressed the button, she "had no reason to believe that any of her personal information would be intercepted, monitored, or recorded by Defendant or any other third-parties undisclosed to her by LMB." (*Id.* ¶¶ 23, 24.) But these allegations contradict her admission that she "believed that only LMB and any other entities disclosed to her as recipients of her information by LMB would be able to intercept, monitor, or record Plaintiff's personal information entered on the YourVASurvey.info website. " (*Id.*) Her allegations of lacking disclosure or notice are thus nonsensical, given the fact that both Suited Connector's Privacy Policy and LMB's Privacy Policy were conspicuously hyperlinked on that page, and each had robust disclosures regarding third party JavaScript, with LMB's Privacy Policy explicitly identifying Jornaya by name. (Smith Decl., ¶ 7, Exh B.) Hill cannot square her allegations that she "had no reason to believe that any of her personal information would be intercepted, monitored, or recorded by Defendant," with her admission that she "believed . . . other entities disclosed to her . . . would be able to intercept, monitor or record" her personal information. As shown, Jornaya is

such an "other entit[y]" for which she believed would have access to her information.

And while Hill may claim that she did not affirmatively consent to those terms by clicking submit or otherwise indicating agreement, "that argument is germane to a clickwrap agreement, not a browsewrap agreement, which is at issue here. Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly; rather, a party instead gives his assent simply by using the website. Where a browsewrap agreement is at issue, the terms of the agreement are binding, even if the user did not actually review the agreement, provided that the user had actual knowledge of the agreement or the website put 'a reasonably prudent user on notice of the terms of the contract.'" *Garcia*, 78 F. Supp. 3d 1125 at 1137. Here, Hill was on notice of the terms of a privacy policy that governed how her information would be used and/or shared with third-parties by virtue of her use of the website and the hyperlinked Privacy Policy. As such, her CIPA claims fail as a matter of law.

## IV.    **CONCLUSION**

For all of the foregoing reasons, Jornaya respectfully requests that the Court dismiss Hill's Complaint with prejudice.

Dated:        October 5, 2020              By: /s Angela C. Agrusa
                                                Angela C Agrusa
                                                David Farkas

DEFENDANT LEAD INTELLIGENCE, INC. D/B/A JORNAYA'S MOTION TO DISMISS THE COMPLAINT